So we're ready to hear argument in our next case, Wilson v. UnitedHealthcare. Ms. Loosery? Yes, Your Honor. When you're ready. Yes, Your Honor. Have at it. Good afternoon, Your Honors. May it please the Court. ERISA is a statutory scheme enacted by Congress, and the purpose of ERISA is to protect employees in employee welfare benefit plans. One of the ways ERISA does that is by guaranteeing a meaningful dialogue between administrators and claimants, of which includes the good-faith exchange of information. That did not happen in this case, and my argument is going to focus on two main ways that the district court erred. First, in determining that Wilson's January 26, 2017 letter was not an appeal, and second, that UnitedHealthcare was not required to respond to Wilson's request for documents. Now, in determining that Wilson's January 2017 letter was not an appeal, the district court misinterpreted one of the plan terms, and the plan term speaks of a retrospective review. So the district court found that what Wilson was requesting was not an appeal, but rather a less formal retrospective review. The plan document does outline what a retrospective review is. However, the retrospective review is something that UnitedHealthcare undertakes, not a claimant. The retrospective review is part of a utilization review process, which is the process that UnitedHealthcare undergoes to determine a claimant's eligibility for benefits. Counsel, does your first argument—I understand the argument about the utilization review and appreciate that from the briefs. Does it matter whether or not the attorney letters were appeals if you made a request for documents and it wasn't responded to? In other words, do we need to decide whether those letters were exercising the appellate rights? It seems pretty clear they're requesting documents. Does the first issue you're raising even matter, I guess is what I'm saying? Yes and no, Your Honor. The applicable code of federal regulations outlines what's included in a full and fair review. And there are a number of items underneath that. One of them is you have to give the claimant the right to appeal the decision. The other one is you have to respond to a request for documents upon which each and every denial was based. So the code of federal regulations necessarily contemplates that there are going to be situations where a claimant may appeal and not request the documents, or they may request the documents to determine if there is a basis to appeal. So to answer your question, not necessarily. Various courts have found that the mere failure to respond to a request for documents fully is enough to establish futility, which then excuses the claimant from exhausting administrative remedies because it denies the claimant access to internal claim procedures. So in that circumstance, is it your view that having asked for the documents in order to determine the pursuit of an appeal, that it's not necessary to note that the request for documents, this is sort of Judge Quattlebaum's question, that the request for documents is not, or the request for documents follows an actual notice of appeal? If I'm understanding Your Honor's question correctly, it doesn't necessarily have to. So this same district court in the Rogers case, in that case the claimant had requested documents upon which the denial was based on two separate occasions, and the insurer did not respond. In that decision, there was no doubt that he did not appeal the decision. Merely he had sent a request for documents on two occasions that were not responded to, and the judge found that that was enough to establish futility under the regulation because providing the documents is a necessary part of a full and fair review. So we could, the district court said that the utilization review process effectively, because of that there was not an obligation to respond to the document request. Your argument is that that provision doesn't apply here. And so if we agree with you there and you've requested the documents, there's an independent obligation to respond. And at least, and your position is since that wasn't done, you've administratively exhausted your remedies under the CFR. Yes, Your Honor. The Code of Federal Regulations is very clear that when a claimant requests the documents upon which a denial is based, the insurer has an absolute obligation to respond to that request for documents. Okay. So if I could, and I don't mean to cut you off, but I've got some specific questions I want to make sure I get in before the time runs out. For the second date of service period, assuming we agree with you on those arguments, are you requesting that our order remand this back to the plan or to United to make a determination, or are you asking that to be done by the district court, or do you have a position on that? It's my understanding, Your Honor, that either this court can do it or the district court can do it. Can do what? Remand it back to the administrator for consideration. That's where you want it to go ultimately. You agree that it shouldn't be done by either us or the district court in the first instance. So I go all the way back. Yes, Your Honor. Okay. Then one, and I apologize, but I just have a, so I'm moving now to the third date of service period. And unlike the second date of service period that identifies dates, and we can look at the RAE information and track those and find dates so we know what those requests are, am I right that the third date of service is kind of a catch-all for any other claim denial? Yes, Your Honor, through the date that the minor was discharged. Is that a valid request for documents without identifying the actual dated period you're referring to? Yes, Your Honor. I think even if you take the second date of service apart from the third date of service, I think futility can be clearly established. Even if you're just considering the second date of service that do have the date specific, if we're requesting documents pursuant to the CFR that we're entitled to have, and UnitedHealthcare is not providing them despite two valid written requests, I think it then is not a significant leap to determine that if we were to request anything on the third date of service, it would also be ignored. Well, maybe. I mean, you're asking us to assume it would be ignored, and the other problem is your letter talks about claims that have been denied as of, and it's written as of January and February 2017, and I read that to at most apply to claims that have been denied up until that point. Is it your position that it also applies to claims that were denied after the date of that letter? Yes, Your Honor. If I remember the letter correctly without having it directly in front of me, it references the specific dates of service and any and all other denied claims. Right. And so at the time of that letter, we ought to be able to tell what was denied, but it doesn't say any claims denied now or in the future, but maybe your argument is that's what it meant. Yes, Your Honor. It is our position that that denial letter referenced both the second date of service and anything continuing forward that would be denied. Thank you. So let me try to recap some of your earlier answers to Judge Qualibon. If we assume, just for purposes of argument, that United was obligated to furnish certain documents to your client, they didn't do that. So there's a finding of futility there. So it then goes back for a full and fair review. Can United still come back and say, you got the documents, we've made our decision, the time long expired for you to note an appeal, therefore it's untimely? Your Honor, under the doctrine of futility, Wilson would be excused from further exhausting administrative remedies, even if it's determined that that would include the notice of appeal. Yes, Your Honor. Even if it's determined that the January 26, 2017 was not an appeal letter, which it's our position that it was, at minimum it was a request for documents that was not fulfilled despite two valid written requests because we then followed up the next month and said we did not receive a response to this request. Can you please give us these documents? So even if that's determined not to be a formal appeal letter, again it is at minimum a request for documents that was not responded to. Again, the Code of Federal Regulations does not say that a request for documents must be accompanied by a formal appeal. It necessarily contemplates that there are going to be situations where claimants request the documents and they're still entitled to those documents, even if they do not lodge a formal appeal. And just because you requested documents in the letter does not make it not an appeal? Correct. So it's our position that the January 26 letter was essentially a part and parcel letter. It was requesting an appeal and then also requesting a copy of each and every document upon which the denial was based so that Wilson would have a reasonable opportunity to review those documents, determine what needed to be responded to, and prepare substantive materials to respond to that. So does the record tell us whether the treatment for the third date of service, which you contend to be dates before the attorney letters and after the attorney letters, does the record tell us whether those claims have all been denied or not? Not in the record, no, Your Honor. I mean, have they? I would assume so, yes, Your Honor. Okay. Ma'am, I shouldn't have even done that once I said they're out in the record, but tell me why you assumed that since I kind of went off the reservation a little bit. All of the dates of service up to that point were denied based on a lack of medical necessity, and I believe that UnitedHealthcare argues in their brief that the third date of service, which is everything from the date of those EOBs through the date of discharge, have been denied. However, that information is just not contained in the record. Along with the request for documents, Your Honors, again, the Code of Federal Regulations does not parse out, unlike where the district court ruled, it does not parse out that a formal appeal request must accompany a request for documents. The request for documents stands alone. If the district court's opinion is allowed to stand, unfortunately it's going to cause widespread negative effects to claimants in various ERISA cases. It's going to send the signal that administrators can simply ignore a claimant and have no repercussions for their actions, and this is completely inconsistent with the statute, the Code of Federal Regulations and prevailing case law in this circuit, and it's going to send the message to claimants that there's no purpose in appealing because they're going to simply be ignored, and unfortunately that is completely contrary to the spirit of ERISA, which is to protect employees and provide a meaningful dialogue between administrators and their claimants. So we would respectfully ask that the district court's opinion be reversed and either remanded to the district court with instructions to remand to UnitedHealthcare or to certainly within this court's power to directly remand it for consideration. Do Your Honors have any additional questions? Well, you've got some rebuttal time, so now we'll hear from Mr. Kimball. Thank you so much. Good afternoon, Your Honors. I'm Chris Kimball. I represent United. This is my first time to argue in the Fourth Circuit, and after a long career, it's about time I'm honored to be here today for arguing with you. So I want to start off with the HIPAA issue because that really is the linchpin and the explanation for why things happened the way that they did. I don't believe now that there's any dispute that the HIPAA authorization that Wilson's counsel submitted to United was invalid. That does not seem to be disputed. The dispute appears to be what was United supposed to do when presented with an invalid HIPAA authorization. Well, maybe tell the claimant that it was an invalid HIPAA authorization and you needed something more. And if you could do that without violating HIPAA, I would agree with you. Well, was everything that was being requested covered by HIPAA? I think there needs to be a distinction between what HIPAA protects and precludes. And don't confuse ERISA documents with information under HIPAA. HIPAA prohibits the unauthorized dissemination of protected health information. It doesn't speak to specific documents. Right, so I was asking, does everything that the claimant requested fall under HIPAA? They would have to have a valid HIPAA authorization for United to provide any of it. Well, the request letter covers documents which include any medical documents. Let's take that in a moment. But substantive documents, the plan documents, and any internal guidelines or regulations. So how could HIPAA apply to those? Because the existence of coverage for a particular individual is itself protected health information under HIPAA. So you're saying the plan document is a HIPAA-protected document? I'm saying that United providing that plan document in reference to a request regarding this particular patient would be providing protected health information. Telling anyone that X individual has coverage is the provision of protected health information. And it could have been a medical record. It could have been a plan document. It doesn't matter if it's a plan. But the law is clear that if you disclose that insurance coverage and documents related to insurance coverage are protected health information, if we had disclosed that to Wilson's counsel without a valid HIPAA authorization, it would constitute a violation of HIPAA. Then I go back to my question. Why not tell the claimant that there's a problem with the documentation you submitted with the signature here? We need that corrected. There's a couple reasons for that. And I understand that makes all the common sense in the world. It makes common sense that we would let counsel know, hey, look, there's a problem with your authorization. You need to fix it. The problem is even doing that would constitute providing protected health information. There's no common sense exception. How does that work? That doesn't make any sense to me. I agree with you. I absolutely agree with you. But there's no common sense exception to HIPAA. It's a strict liability. Where do we look to see that you can't tell somebody your signature on this HIPAA authorization is on the wrong line or signed by the wrong person? Because it would involve providing protected health information without a release. I know if you wrote back to the counsel and said, we've received these items from you. There's a document that purports to be a HIPAA release, and we're unable to determine the terms of the release and who the signatories are. Period. Very truly yours. How is that a HIPAA violation? I will tell you why. Let's assume that letter was sent to Cigna instead of UnitedHealthcare. Cigna doesn't insure this particular individual. Cigna gets that letter. Do you really think that they're going to send a letter to Wilson's counsel saying, you sent me a valid HIPAA authorization, an invalid HIPAA authorization. Send me a valid one, and I'll tell you this person is not covered by us. They're not going to do that. They're going to respond, if they respond at all, they're going to respond by saying, we never heard of this person. And they have no obligation under HIPAA to that individual because they're not a covered entity as to that individual. But Wilson's counsel was right when she says that if the district court opinion is allowed to stand, that it's going to send a message that administrators can just ignore claimants with no repercussions. I guess what you're saying is administrators can currently just ignore claimants. Well, to do what you're doing, they would have to incur the potential penalties of a civil and criminal violation of HIPAA to get to that point. The problem with that is that there's no duty apart from HIPAA. Let's just say this. Apart from HIPAA, there's no duty on behalf of any ERISA fiduciary. I'm talking about where a representative – let me step back a second. ERISA contemplates representatives acting on behalf of beneficiaries, and fiduciaries are obligated to work with representatives on behalf of beneficiaries. They are not allowed, without a valid HIPAA authorization, to provide any protected health information. What was the problem with the HIPAA authorization here? It had an invalid signature.  Because it was on the wrong line, or because it appeared to be the minor signature, or both? You have to look at the document as a whole. The document purported to be an authorization by the patient, had his Social Security number on it, had his name at the top of it, had a signature line on signature line for the patient, and it specifically said, I am providing this authorization on my own. He was legally incapable of signing that. So it was because the minor's signature was on it, and not the custodial parent's signature? That's correct. There's a separate place. If you look at that form, you'll see there's a – So what HIPAA violation is it to respond back and say, a minor can't sign this legal document? Because it's an implicit admission that there's coverage, and that's PHI. Why else would United do that if they didn't have something to tell them once they got a valid authorization? Well, you could have something to tell them one way or the other, even if they're – even if the Cigna person, if it's not coverage. The Cigna would have no obligation to respond to them. But if they did, that's probably what they would say. They wouldn't go to the administrative expense of getting a different authorization in order to say, not our person. So, counsel, is there – I mean, your interpretation of there being a HIPAA violation based on the questions we've all kind of asked, I mean, is that – has a court recognized that as a violation? Can you – other than your interpretation that that would be an implicit admission of coverage and therefore a violation, is there any court that's ever adopted that interpretation? I've not found one on these facts. I did cite the Tate case to you, which is the closest we could find, which is when an authorization was required in that particular case. And that acknowledging – and that's the important point for us in that case, was acknowledging that you even had new records on that person in response to that document that was submitted to that insurer would constitute a violation without an authorization. And that's our case. We don't have a valid HIPAA authorization. And that's – and that's – the thing that gets me about this particular issue is Wilson's counsel had two different opportunities to fix that problem. First they didn't know what the problem was. Well, I believe they did. And let me tell you what. Let me tell you what. When – in my practice, when I've sent something out that should have generated a response from someone and I don't get a response, the first thing I do is to look to see what I sent out because I want to make sure, first off, it actually went out in the mail, and second, that I dotted all the I's and crossed the T's, in fact, because I don't want egg on my face. But if it's there, then I – that's when I look to say, you should have responded to me. I don't assume out of the box that I was being ignored. So a month later, Wilson's counsel sends that same letter again and says, I sent you this letter last month. And she talks about the medical records that she had that she was going to get any day now. She didn't include those, never did send those. But she does include the first letter, and she does not attach the HIPAA authorization, though, to that second letter. That would have been a second opportunity. Anybody, as much time as they spend in this space, they could have looked at that and said it would be obvious to anybody looking at it that that signature is on the wrong line and it's invalid. Well, other than the Tate case that you referenced, is in your briefing or somewhere in the record before the district court, have you given any more specific HIPAA statute regulatory or case law that would be relevant directly to this particular situation? In what way? There are several issues on that. You're talking about as to whether we have an obligation to query the counsel, if that's what they are obligated to. That and what your authority is not to query counsel. Okay. My authority not to query counsel is under ERISA. There's no obligation under ERISA to contact. Do you have a site, a statute, a regulation, a number? I can give you a case. Is it Tate again? Yes, Your Honor, I can. And I'll give you the case. It's Ellis v. MetLife out of the Fourth Circuit, which said that ERISA does not impose a duty on fiduciaries to help claimants prepare, perfect, or prevail on claims. It's no different than appeals. Appeals are not any different than that. And the reason that the Fourth Circuit said that was the law is because our duties, a fiduciary's duties, run to the plan as a whole. They don't run to any particular plaintiff. Is it Ellis v. MetLife? Yes, ma'am. 126 Bed 3rd, 228. Is that in your brief somewhere? I think it's in plaintiff's brief, actually. All right. So it's not in yours? Not in mine. For the position that you're espousing, it's not in your brief? The position that we had a duty? I'm sorry. I don't know. I thought you just cited Ellis v. MetLife as support for your argument. That's correct, yes, Your Honor. Okay. And yet you did not put the case that's in support of your argument in your brief? Am I looking in the wrong place? I don't know that I specifically argued Ellis for this particular proposition. But the proposition you asked me about just now is where's the source of the duty that says you have no obligation to do that? And this Court has said under these circumstances that obligation does not exist. But it's fair to – I mean, I understand the general proposition. You don't have a responsibility to do their work for them, perhaps. But when they submit a request that the plan authorizes them to make and that obligates you to respond to generally and that ERISA authorizes them to make and that ERISA obligates you to respond to generally. That's correct. We're not talking about making a claim. We're talking about responding to a claim that you have an obligation both plan-wise and by statute to respond to. And it sounds like you're saying, yeah, you don't have to because doing so implicitly suggests there may be coverage and is a HIPAA violation. That is correct. Okay. I think at least I understand the argument and we'll decide whether it's – if that's wrong. That's the Tate case in your – Tate supports my position on that. There's no – I cannot find a case directly on point that's on all fours. Well, I'm not going to cut off Judge Quattlebaum, but I think it would be useful to us for there to be a 28J letter with specificity citing to HIPAA or its regulations or specific cases as to why the non-medical documents could not have been disclosed. And then opposing counsel can answer the 28J letter if she so chooses. Well, I don't want to take up all your time with this part, but if I could suggest that if we just assume for purposes of argument that we disagree with your HIPAA position, why don't you take us through the rest of the case from your standpoint? So if you disagree that we had an obligation to conduct the appeal or an obligation to provide documents, that's not fair. Let's start with providing the documents, that we conclude that there was an obligation to provide documents. All right, sir. If that's the case, then the correct remedy is obviously not that plaintiff wins benefits. The Gagliano case out of this circuit makes that clear. It would be to provide the documents and then do a double remand back to UnitedHealthcare to conduct the appeals. I think it's hard, though, to divorce the document request from the letter, and that seems to be what the Court's focusing on. There was a document request in it, but also it was a demand that we provide or initiate an appeal, and you have to consider the context in which United is considering this when it gets this letter. There's a 30-day deadline in which to conduct an appeal in this planned document. There is also a provision in that planned document that tells individuals, if participants, if you need assistance with your appeal, you contact an entity that's established by the State of New York to provide you assistance in an appeal. So the reason that United could not respond either to the appeal, actually it's twofold they can't respond to the appeal. First off, there's no validative authorization. Second, counsel does not dictate how and when an appeal is conducted. The plan is talismanic there. It says you have to do it within 30 days. So United couldn't even do what plaintiff's counsel asked them to do by starting an appeal and then put it on hold at her discretion when she got in the rest of her points. And she makes that point. I'm sorry. If you look at the letter she sent and you look at what the plan required to be submitted, even though she took issue with the fact I don't have the plan, all of the elements required in the plan that's supposed to be in an appeal letter she touched on in her letter. I don't know if she actually had the plan or not. Perhaps she got it from her client. I don't know. I know she didn't get it from us because we didn't have an authorization to give it to her. But the point is there was no prejudice to her or to Wilson for not having all of those documents in order to make the appeal that they wanted to make. They just didn't have their information together yet. And they had 180 days from a denial in which to pull that together. But aren't you making that decision on counsel's behalf? I'm sorry. Aren't you making that decision on counsel's behalf, opposing counsel's behalf? By doing what? Well, by saying that they didn't need a number of the documents that were nonmedical related that they requested. No, I'm not saying that at all. They're entitled to get them from us if they have a valid HIPAA authorization. All right. Let me ask you separately. The district court, as part of its decision as to the failure to administratively exhaust, says that the previously denied, that the first letter and the second letter were of previously denied claims. And the review of those claims would be considered a retrospective review. But looking at the terms of the plan, by definition, the retrospective review is for a medical service that was rendered without prior authorization. And it's reviewed after the fact to determine whether or not there'll be a payment made for that, assuming usually to the provider. So that wouldn't have anything to do with an internal review for appeal. I mean, that just seems like to me that the district court was wrong under the terms of the plan when it made that determination. I agree with you. It got confused. The retrospective review, you're exactly right, refers to services that have already been rendered. It could be an initial denial is a retrospective review. It could be an appeal of an initial denial would be a retrospective review. However, the significance here is that that's harmless error, because the district court got it right that the letters were not appeals because it didn't contain all of the elements required by the plan for it to be an appeal. So why does that, if you're correct there that the letters are not sufficient to be an appeal, why does, aside from HIPAA, why do you not have to produce the documents? Is there some — is there something that says you don't have to produce documents before there's a valid appeal letter? No, Your Honor. So you got an appeal letter. I mean, you got a letter that, as you said, under your argument, is not an appeal letter, but is a mere request for documents. And you seem to say you don't have to have an appeal letter in order to obligate you to produce the documents. That's correct. So what is — does that get us back to HIPAA? That's the only thing that — That's the only reason we didn't get the documents is because there was an invalid HIPAA authorization attached to the letter. Okay. Anything else you want to tell us here in your closing seconds? In my two seconds, no, sir. Thank you for the opportunity. Thank you very much. Ms. Luziri, you've got some rebuttal time. Thank you, Your Honor. Just a few points. The district court found that the plan document is not governed by HIPAA, and the district court is correct on that. The owner of the plan, if you will, or the claimant, is not the minor. It's Kenneth Wilson, who is my client. It's not contained in the joint appendix before this court, but with the lower court administrative record, I also included with that January 26th letter a confirmation of representation giving UnitedHealthcare the right to correspond with me on this claim, which is a right that is guaranteed under the regulation. Your Honors, I have — Where do we find that now? It's 29 CFR. I know I cited it in my brief. No, the actual letter. Oh, I'm sorry. The confirmation of representation is included in the lower court's administrative record. I can provide that to the court. Why don't you do your own 28-J letter and send that to us and tell us where we can find it. Yes, Your Honor. The plan document, again, is not governed by HIPAA. It's clearly governed by ERISA. The regulation contemplates that that should be provided. Technically, I could have written to Wilson's employer and gotten the plan document with no problem. Administrators have the duty to provide those documents. At the bare minimum, they should have provided me the plan document. UnitedHealthcare is arguing that my appeal letter didn't comply with the terms of the plan while at the same time saying that they were not required to provide me with the plan, and so I can't abide by something that I'm not provided. Second, I would respectfully submit that the Ellis decision actually supports my position. It was one of the first cases that this court came out with back to me. Which is why you cited it four times in your brief. Yes, Your Honor. And it's also in your attorney letter in January of 17, right? Yes, Your Honor. It's my understanding that this was the, if not the first, one of the first cases by this circuit that interpreted the Code of Federal Regulations to require that the claimant's opportunity to review each and every document upon which the denial is based is absolutely essential to a full and fair review. This court followed that up with Gagliano, which I believe was in 2008. And most recently, while not cited in my brief, the Odle v. UMWA case, which is an unpublished decision from 2019 from this court, also says that if you are using a document to deny a claim, then you have to provide that to the claimant and give them the opportunity to respond to that. Back to the HIPAA argument, Your Honors, I have several cases where an insurance company wants their own authorization signed. They send it to me. I send it to my client. We get it filled out. We submit it. I have no other problems. I cannot know that a HIPAA-compliant release is signed on the wrong line or somehow deficient if they're not going to tell me. I can't respond to something that I'm not given the chance to respond to. I believe I cited in my briefs as well, the joint appendix is clear that they received my letter. They marked it as an attorney request for documents, and that's it. They never told me the HIPAA-compliant release was wrong. They never called me. They never emailed me. They never sent me a letter. I cannot correct something that I'm not aware of as an error. And so for those reasons, we would, again, respectfully request that either this court remand it back to the district court to remand it back to UnitedHealthcare or remand it back directly so that we can exhaust administrative remedies. Well, thank you very much. It's part of our traditional court practice to come down after every argument and greet counsel in person, but that's a casualty of COVID, at least for the time being. So we will thank counsel for your arguments today and look forward to receiving your 28J letters and any response to those, keeping in mind that they are not supplemental briefs. They're letters. And with that, I'm going to ask the clerk if she'll declare a short recess, and the court will go out and take that and then come in for our last case. This honorable court will take a brief recess. Your Honors, I apologize. When would you like to receive those 28J letters? As soon as you can get to them. I will get it to you. Thank you so much.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.